Docusign Envelope ID: BBF9087C-631F-45BF-B4AC-03F012A3FC44

**THIS IS A COPY**
The Authoritative Copy of this record is held at NA4.docusign.net



**AUXILIOR**
CAPITAL PARTNERS

Loan & Security Agreement ▆2906-R

**Borrower:**

| Legal Name:<br>RTL Leasing, LLC | Fed Tax ID# ▆ | | |
|---|---|---|---|
| Legal Address:<br>13717 S RT 30 STE 111<br>PLAINFIELD, IL 60544 | Phone Number:<br>(630) 390-9873 | Cell Number:<br>6303909873 | Fax Number: |
| Billing Address:<br>13717 S RT 30 STE 111<br>PLAINFIELD, IL 60544 | E-Mail Address:<br>jake@reserveltd.com | | |
| Send Invoice to Attention of:<br>Jake Kuenzl | Vendor Name: | | |

**Equipment:**

| Quantity | Year | Manufacturer / Model | Description | Serial Number |
|---|---|---|---|---|
| | | | SEE SCHEDULE A | |

**Equipment Location Address:**

| Address | City | State | Zip Code |
|---|---|---|---|
| 13717 S RT 30 STE 111 | PLAINFIELD | IL | 60544 |

**Transaction Terms/Payment Schedule:**

| Principal Amount:<br>$2,113,122.29 | Interest Rate:<br>4.90% | Payable:<br>Monthly | Payment Amount:<br>$48,607.71 | Term:<br>48 |
|---|---|---|---|---|
| Advance Payment: $0.00 | | Security Deposit: $0.00 | | Documentation Fee: $0.00 |

See attached Schedule B for variable payment structure.

We have written this Loan & Security Agreement ("Loan") in plain language because we want you to understand terms. Please read your copy of this Loan carefully and feel free to ask us any questions you may have. The words "you" and "your" mean the Borrower named above. The words "we", "us," and "our" refer to the Lender named below. THE TERMS OF THIS LOAN (INCLUDING THOSE ON THE FOLLOWING PAGES) SHOULD BE READ CAREFULLY BECAUSE ONLY THOSE TERMS IN WRITING ARE ENFORCEABLE. TERMS OR ORAL PROMISES WHICH ARE NOT CONTAINED IN THIS WRITTEN LOAN MAY NOT BE LEGALLY ENFORCED. YOU MAY CHANGE THE TERMS OF THIS LOAN ONLY BY ANOTHER WRITTEN AGREEMENT BETWEEN YOU AND US. YOU AGREE TO COMPLY WITH THE TERMS AND CONDITIONS OF THIS LOAN. THIS LOAN IS NOT CANCELABLE. YOU AGREE THAT THE PROCEEDS OF THE LOAN WILL BE USED FOR BUSINESS PURPOSES ONLY AND NOT FOR PERSONAL, FAMILY OR HOUSEHOLD PURPOSES.

YOU CERTIFY THAT ALL THE INFORMATION GIVEN IN THIS LOAN AND YOUR APPLICATION WAS CORRECT AND COMPLETE WHEN THIS LOAN WAS SIGNED. THIS LOAN IS NOT BINDING UPON US OR EFFECTIVE UNLESS AND UNTIL WE EXCUTE THIS LOAN. THIS LOAN AND ALL SCHEDULES WILL BE GOVERNED BY THE LAWS OF THE COMMONWEALTH OF PENNSYLVANIA. YOU SPECIFICALLY WAIVE ANY DEFENSE BASED UPON FORUM NON CONVENIENS AND YOU ADMIT THAT MONTGOMERY COUNTY, PENNSYLVANIA IS A CONVENIENT FORUM TO RESOLVE ALL DISPUTES UNDER THIS LOAN. ALL DISPUTES UNDER THIS LOAN SHALL BE RESOLVED IN THIS JURISDICTION AND VENUE OF FEDERAL COURT IN THE EASTERN DISTRICT OF PENNSYLVANIA OR STATE COURTS IN MONTGOMERY COUNTY, PENNSYLVANIA.

**BY SIGNING THIS LOAN BELOW, YOU AGREE TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS ON THE FOLLOWING PAGES.** You agree to submit the original loan documents with any security deposit to Lender or its assignee via overnight courier. Should we fail to receive these originals, you agree to be bound by an electronic copy of this Loan with appropriate signatures on the document. Borrower waives the right to challenge in court the authenticity of an electronic copy of this Loan and the electronic copy shall be considered the original and shall be the binding agreement for the purposes of any enforcement action under paragraph 14. The Loan and any amendments, waivers, consents, or supplements thereto and all documents related therewith may be signed electronically pursuant to the Electronic Signatures in Global and National Commerce Act, the Uniform Electronic Transactions Act, the UCC and other applicable law. All signatures so generated, as well as those transmitted by facsimile, email, digital photography, or other electronic means, shall for all purposes be deemed to be effective, binding, legally admissible and have the same effect as a manually applied ink signature. For perfection purposes only, the version of the Loan that contains Lender's original signature or, if the Loan is fully executed electronically, the authoritative copy as defined by the UCC, shall constitute the sole record of "chattel paper" for UCC purposes

| Lender:<br>Auxilior Capital Partners, Inc. | | Borrower:<br>RTL Leasing, LLC | |
|---|---|---|---|
| Signature:<br>*Susan Debro* | Date:<br>7/30/24 | Signature:<br>Signed by:<br>*Jacob Kuenzl* | Date:<br>7/26/2024 |
| Print Name:<br>Susan Debro | Title:<br>VP, Operations | Print Name: JACOB KUENZL | Title: MEMBER |

**EXHIBIT 1**

Docusign Envelope ID: BBF9087C-631F-45BF-B4AC-03F012A3FC44

THIS IS A COPY
The Authoritative Copy of this record is held at NA4.docusign.net

## TERMS AND CONDITIONS

1. LOAN. For value received, the Borrower hereby unconditionally promises to pay to the order of Lender the amounts described above (the "Loan Payments"). In the event we become aware of adverse credit information about you and/or the Guarantor(s) after you sign this Loan and prior to our acceptance of this Loan, we may at our sole discretion, cancel this Loan. ONCE WE ACCEPT THIS LOAN, YOU MAY NOT CANCEL IT DURING THE FULL LOAN TERM. You agree to be bound by all the terms of this Loan from the date you execute this Loan ("Effective Date") until you have paid the Loan in full.

2. DELIVERY, ACCEPTANCE OF EQUIPMENT AND COMMENCEMENT OF THE LOAN. Borrower hereby certifies to Lender that the Equipment has been duly ordered, an invoice for the Equipment has been issued and the Equipment will be delivered to the location where it will be used. Borrower acknowledges that signature of this document confirms that Equipment will be properly installed and in good working order and constitutes an unconditional acceptance of the Equipment upon delivery and hereby authorizes the commencement of the Loan ("Commencement Date").

3. PAYMENT. You agree to pay us the Loan Payments when each payment is due. If we designate the Loan Payments to begin later than the Commencement Date, you will pay interim interest on the Principal Amount from the Commencement Date until the first Loan Payment due date. Interim interest shall be equal to the pro rata portion of the daily equivalent of the Loan interest rate. Payment is due whether or not you receive an invoice from us. You authorize us to change the payment by not more than 15% due to changes in the: Equipment configuration accepted by you which may occur prior to our acceptance of this Loan. Restrictive endorsements on checks you send to us will not reduce your obligations to us. For any payment which is not received by its due date, you agree to pay a late charge equal to the higher of 10% of the amount due or $25.00 (not to exceed the maximum amount permitted by law), as reasonable collection costs. We may charge you a return check or non-sufficient funds charge of $50.00 for any payment which is returned by the bank for any reason (not to exceed the maximum amount permitted by law). Provided there is no default, you will be permitted to prepay your Loan in whole but not in part if simultaneously pay a premium as follows: 1% for each year or partial year remaining in the Loan Term.

4. UNCONDITIONAL OBLIGATION. YOU AGREE THAT YOU ARE UNCONDITIONALLY OBLIGATED TO PAY ALL PAYMENTS AND ANY OTHER AMOUNTS DUE UNDER THIS LOAN FOR THE FULL LOAN TERM EVEN IF THE EQUIPMENT IS DAMAGED OR DESTROYED, IF IT IS DEFECTIVE OR YOU HAVE TEMPORARY OR PERMANENT LOSS OF ITS USE. YOU ARE NOT ENTITLED TO REDUCE OR SET OFF AGAINST PAYMENT OR OTHER AMOUNTS DUE UNDER THIS LOAN FOR ANY REASON WHATSOEVER.

5. DISCLAIMER OF WARRANTIES. THE EQUIPMENT IS BEING USED BY YOU IN AS-IS CONDITION. NO INDIVIDUAL IS AUTHORIZED TO CHANGE ANY PROVISION OF THIS LOAN. YOU AGREE THAT WE HAVE NOT MANUFACTURED THE EQUIPMENT OR LICENSED THE EQUIPMENT AND THAT YOU HAVE SELECTED THE EQUIPMENT BASED UPON YOUR OWN JUDGMENT. YOU HAVE NOT RELIED ON ANY STATEMENTS WE OR OUR EMPLOYEES HAVE MADE. WE HAVE NOT MADE AND DO NOT MAKE ANY EXPRESS OR IMPLIED REPRESENTATIONS OR WARRANTIES WHATSOEVER, INCLUDING WITHOUT LIMITATION, THE EQUIPMENT MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, SUITABILITY, DESIGN, CONDITION, DURABILITY, OPERATION, QUALITY OF MATERIALS OR WORKMANSHIP, OR COMPLIANCE WITH SPECIFICATIONS OR APPLICABLE LAW. You are aware of the name of the Equipment manufacturer. You agree to contact the manufacturer for a description of your warranty rights. Provided you are not in default under this Loan, you may enforce all warranty rights directly against the manufacturer of the Equipment. You agree to settle any dispute you may have regarding performance of the Equipment directly with the manufacturer of the Equipment.

6. SECURITY INTEREST. To secure all of your obligations to us under this Loan you hereby grant us a security interest in (a) the Equipment to the extent of your interests in the Equipment, (b) anything attached or added to the Equipment at any time, (c) any money or property from the sale of the Equipment, and (d) any money from an insurance claim if the Equipment is lost or damaged. You agree that the security interest will not be affected if this Loan is changed in any way. You hereby irrevocably authorize us at any time and from time to time to file in any Uniform Commercial Code jurisdiction any financing statements and amendments thereto and appoint us (or our agent) as your true and lawful attorney-in-fact to affix your signature to UCC financing statements prepared and filed on your behalf by us (or our agent) with the same force and effect as if you had signed such financing statements. If we request, you agree to sign financing statements in order for us to publicly record our security interest. This Loan or a copy of this Loan shall be sufficient as a financing statement and may be filed as such. This Loan may be executed in counterparts, and facsimile signatures shall suffice as originals.

7. USE, MAINTENANCE AND REPAIR. You shall (1) use the Equipment solely in the continental United States and in the conduct of your business, for the purpose for which the Equipment was designed, in a careful and proper manner; and (2) operate, maintain, service and repair the Equipment, and maintain all records and other materials relating thereto, in accordance and consistent with (i) the supplier's recommendations, (ii) the requirements of all applicable insurance policies, (iii) the supply contract, so as to preserve all of your and our rights thereunder, including all rights to any warranties, indemnities or other rights or remedies, and (iv) all applicable Laws. All Equipment will meet all of the rules and regulations of the Department of Transportation, Interstate Commerce Commission, applicable State Regulations, and any other applicable regulatory inspection and operating requirements including but not limited to such aspects as being equipped with safety Equipment, being in proper operating condition and having a Vehicle Identification Number plate securely affixed. We and/or our designated representatives may inspect and photograph the Equipment and all applicable maintenance or other records relating thereto at any reasonable time during normal business hours without prior notice. Upon request, you shall advise us of the exact location of any and all items of Equipment.

8. TAXES. You agree to pay, when due, all taxes, fines, and penalties relating to this Loan or the Equipment that are now or in the future assessed or levied by any state, local or other government authority ("Taxes"). We do not have to contest any taxes, fines, or penalties. If required, you will pay estimated property taxes as invoiced and all other taxes and charges, relating to the ownership purchase, possession, or use of the Equipment. You shall reimburse and indemnify us, immediately upon demand, for all Taxes. This indemnity continues even after the Loan has expired or has been terminated for acts or omissions which occurred during the Loan Term.

9. INDEMNITY. We are not responsible for any injuries, damages, penalties, claims or losses, including legal expenses, incurred by you or any other person caused by the transportation, installation, selection, purchase, loan, ownership, possession, modification, maintenance, condition, operations, use, return or disposition of the Equipment. You agree to reimburse us for and defend us against any claims for such losses, damages, penalties, claims, injuries, or expenses. This indemnity continues even after the Loan has expired for acts or omissions which occurred during the Term.

10. IDENTIFICATION. You authorize us to insert or correct missing information on this Loan, including your official name, serial numbers, and any other information describing the Equipment. We will send you copies of the changes. You will attach to the Equipment any name plates or stickers we provide you.

11. LOSS OR DAMAGE. You are responsible for any loss of the Equipment from any cause at all, whether or not insured. If any item of the Equipment is lost, stolen or damaged, you will promptly notify us of such an event. Then, at our option, you will repair the Equipment so that it is in good condition and working order. If you have satisfied your obligations under Section 11 and you are not in default, we will forward to you any insurance proceeds which we receive for such lost, damaged, or destroyed item. If you are in default, we will apply any insurance proceeds we receive to reduce your obligations under Section 14 of this Loan.

12. INSURANCE. During the term of a Loan, you will keep the Equipment insured, at your sole cost and expense, against all risks of a loss or damage in an amount not less than the replacement cost of the Equipment. You will also obtain and maintain for the term of a Loan, comprehensive public liability insurance. You will pay all premiums for such insurance. If you do not provide such insurance, you agree that we have the right, but not the obligation, to obtain such insurance and charge you for all costs. You irrevocably appoint us as your attorney-in-fact to make claims for, receive payment of, and execute and endorse all documents, checks or drafts in payment for loss or damage under any said insurance policies. If your agent or broker does not confirm property insurance coverage on the Equipment at our request for confirmation or cancellation of existing policy, the Equipment will be insured under our

Docusign Envelope ID: BBF9087C-631F-45BF-B4AC-03F012A3FC44

THIS IS A COPY
The Authoritative Copy of this record is held at NA4.docusign.net

## TERMS AND CONDITIONS

policy. An insurance charge will be added to each of your invoices. The insurance charge includes premium, interest and/or finance charges on that premium, fees for tracking the insurance, and administration expenses (including a fee payable to us which may include a profit). You will also have the option of participating in any property insurance program we may offer.

13. DEFAULT. You will be in default under this Loan if any of the following happens: (a) we do not receive any payment or other payment due hereunder 10 days after its due date (no prior notice from us to you of such default is necessary), or (b) you or any of your guarantors become insolvent, are liquidated, dissolve, stop doing business, divide into two or more entities, or assign rights or property for the benefit of creditors, or (c) a petition is filed by or against you or any of your guarantors under any bankruptcy or insolvency law, or (d) (for individuals) you or any of your guarantors die, or have a guardian appointed, or (e) any representation you have made in this Loan shall prove to be false or misleading in any material respect, or (f) any of your guarantors breach their guaranty by not correcting the default within 10 days after we send you written notice of the default, (g) you default on any other agreement between you and us (or our affiliates), (h) you default under any other material agreement between you and a third party or affiliate, or (i) if there has been a material adverse change in your business, assets, operations, condition (financial or otherwise) or results of operations.

14. REMEDIES. Upon the occurrence of default, we may, in our sole discretion, do any or all of the following: (a) provide written notice to you of default, (b) as liquidated damages for loss of a bargain and not as a penalty, declare due and payable: (i) any and all amounts which may be then due and payable by you to us under this Loan Agreement, plus (ii) all Loan Payments remaining through the end of the Loan Agreement term, discounted at the higher of 3% or the lowest rate allowed by law. We have the right to appoint a receiver or require you to make the Equipment available to us for repossession during reasonable business hours or we may repossess the Equipment, so long as we do not breach the peace in doing so, or we may use legal process in compliance with applicable law pursuant to court order to have the Equipment repossessed. You will not make any claims against us or the Equipment for trespass, damage, or any other reason. If we take possession of the Equipment, we may (a) sell or lease the Equipment at public or private sale or lease, and/or (b) exercise such other rights as may be allowed by applicable law. You remain liable for any deficiency. Although you agree that we have no obligation to sell the Equipment, if we do sell the Equipment, we will apply any proceeds we receive to reduce your obligations under this Section 14 and any surplus remaining shall be returned to you. You agree (a) that we only need to give you 10 days advance notice of any sale and no notice of advertising, (b) to pay all of the costs we incur to enforce our rights against you including attorney's fees, and (c) that we will retain all of our rights against you even if we do not choose to enforce them at the time of your default. You further agree this Loan is cross collateralized with any loan, lease or other obligation between you and your affiliates and us (the "Other Obligations"). Accordingly, you agree that any default as stated in this Loan or under the Other Obligations shall also be a default under the non-defaulted obligation. We shall be entitled to exercise all rights and remedies available to us including without limitation, the right to foreclose on and sell any equipment subject to this Loan or the Other Obligations and apply the proceeds to the Loan or Other Obligations in our discretion. For so long as any obligations and liabilities remain outstanding with respect to the Loan and Other Obligations all security interests granted under the Loan and Other Obligations shall remain in full force and effect as security for your obligations and shall not be released until all obligations and liabilities under the Loan and Other Obligations have been fully paid and discharged. These remedies are cumulative, and in addition to any other remedies provided for by law and may be exercised concurrently or separately. Any failure or delay by us to exercise any right shall not operate as a waiver of any other right or future right.

15. RETURN OF EQUIPMENT. If (a) a default occurs, you will immediately return the Equipment, manuals and accessories to any location(s) and aboard any carrier(s) we may designate in the continental United States. The Equipment must be properly crated in its original packaging according to manufacturer's recommendations or specifications, freight prepaid and insured, maintained in accordance with Section 7, and in "Average Saleable Condition" which means that all of the Equipment is immediately available for us by a third-party buyer, user or borrower, other than yourself, without the need for any repair or refurbishment. All Equipment must be free of markings. You will pay us for any repair,

refurbishment, missing or defective parts or accessories.

16. YOUR REPRESENTATIONS. You state for our benefit that as of the date of this Loan and throughout the Term (a) you have the lawful power and authority to enter into this Loan, (b) the individuals signing this Loan have been duly authorized to do so on your behalf, (c) all financial information you have provided us is true and accurate and provides a good representation of your financial condition, (d) you have all licenses, permits, rights, powers, consents or approvals from or by all persons or governmental authorities having jurisdiction over you that are necessary or appropriate for the conduct of your business, (e) the execution, delivery and performance by you of this Loan, and the creation of all liens provided for herein (x) are not and will not be in violation of any applicable law or contractual obligation, and (y) does not and will not require the consent or approval of any governmental authority or any other person, (f) you will promptly notify us in writing if you move your principal place of business, or if you change the name of your business, (g) you will take any action we reasonably request to protect our rights to the Equipment and to meet your obligations under this Loan.

17. ASSIGNMENT. YOU WILL NOT SELL, TRANSFER (INCLUDING, WITHOUT LIMITATION, ANY TRANSFER RESULTING FROM YOUR DIVISION INTO TWO OR MORE ENTITIES), ASSIGN, PLEDGE, LEND OR PART WITH POSSESSION OF THE EQUIPMENT, OR FILE, OR PERMIT A LIEN TO BE FILED AGAINST THE EQUIPMENT. We may, without notifying you, sell, assign, or transfer this Loan and our interest in the Equipment. You agree that if we do so, the new owner (and any subsequent owners) will have the same rights and benefits that we now have but will not have to perform any of our obligations. You agree that the rights of the new owner will not be subject to any claims, defenses, or set offs that you may have against us. Any such assignment, sale, or transfer of this Loan or Equipment will not relieve us of any obligations we may have to you under this Loan. If you are given notice of the new owner of this Loan, you agree to respond to any requests about this Loan and, if directed by us, to pay the new owner all payments and other amounts due under this Loan.

18. COLLECTION EXPENSES, OVERDUE PAYMENT, TERMINATION. You agree that we can, but do not have to, take on your behalf any action which you fail to take as required by this Loan, and our expenses will be in addition to the payment which you owe us. To the extent allowed by law, any late payment or non-payment of any past due amount will accrue interest at the lower of 18% per annum or the highest legal rate from the due date until paid.

19. MISCELLANEOUS. This Loan contains our entire agreement and supersedes any conflicting provision of any equipment purchase order or any other agreement. TIME IS OF THE ESSENCE IN THIS LOAN. If a court finds any provision of this Loan to be unenforceable, the remaining terms of this Loan shall remain in effect. You authorize us (or our agent) to (a) obtain credit reports, (b) make such other credit inquiries as we may deem necessary, and (c) furnish payment history information to payment reporting agencies. To the extent permitted by law, we may charge a fee to cover our documentation and investigation costs. For South Dakota Residents: If there are any improprieties in making the loan or loan practices, please contact the SD Division of Banking: South Dakota Division of Banking, 1714 Lincoln Ave, Suite 2, Pierre, SD 57501 (605) 773-3421.

20. NOTICES. All of your written notices to us must be certified mail or recognized overnight delivery service, postage prepaid, to us at our address stated in this Loan, or by facsimile transmission to our facsimile telephone number, with oral confirmation of receipt. All of our notices to you may be sent first class mail, postage prepaid, to your address stated in this Loan. At any time after this Loan is signed, you or we may change an address or facsimile telephone number by giving notice to the other of the change.

21. WAIVERS. WE AND YOU IRREVOCABLY WAIVE ANY AND ALL RIGHT EITHER OF US MAY HAVE TO A TRIAL BY JURY IN ANY ACTION, PROCEEDING OR CLAIM OF ANY NATURE RELATING TO THIS AGREEMENT, ANY DOCUMENTS EXECUTED IN CONNECTION WITH THIS AGREEMENT OR ANY TRANSACTION CONTEMPLATED IN ANY OF SUCH DOCUMENTS. WE AND YOU ACKNOWLEDGE THAT THE FOREGOING WAIVER IS KNOWING AND VOLUNTARY. We will not be liable for the specific performance of this Loan for any losses, damages, delay or failure to deliver the Equipment.

22. CHANGE IN BUSINESS, MANAGEMENT OR OWNERSHIP. You covenant and agree that from the date of this Loan Agreement until all of the obligations have been paid in full and all of our commitments have

Docusign Envelope ID: BBF9087C-631F-45BF-B4AC-03F012A3FC44

**THIS IS A COPY**
The Authoritative Copy of this record is held at NA4.docusign.net

## TERMS AND CONDITIONS

been terminated, you will not, without our prior written consent (a) make or permit any change in (i) your form of organization, (ii) the nature of your business as carried on as of the date hereof, (iii) the composition of your current executive management, or (iv) your equity ownership, or (b) merge or transfer (including, without limitation, any transfer resulting from your division into two or more entities) all or substantially all of your stock or assets requested.

23. FINANCIAL REPORTING. If the aggregate original lease amount and/or aggregate original principal loan amount owed by you or your affiliates pursuant to all contracts with us is (a) $500,000 or less, you shall promptly provide us any financial information reasonably requested, (b) between $500,000 and $1,000,000 you shall provide internally prepared annual financial statements, (c) between $1,000,001 and $5,000,000 you shall provide internally prepared quarterly and annual financial statements, (d) between $5,000,001 and $10,000,000, you shall provide internally prepared quarterly financial statements and certified public accountant reviewed annual financial statements, and (e) more than $10,000,000, you shall provide internally prepared quarterly financial statements and annual financial statements audited by a certified public accountant.

24. USA PATRIOT ACT NOTICE. To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify and record information that identifies each Borrower that opens an account. What this means: when you open an account, we will ask for the business name, business address, taxpayer identifying number and other information or documentation that will allow us to identify you, such as organizational documents. For some businesses and organizations, we may also need to ask for identifying information and documentation relating to certain individuals associated with the business or organization.

25. ANTI-MONEY LAUNDERING / INTERNATIONAL TRADE LAW COMPLIANCE. You represent and warrant to us, as of the date of this Loan Agreement, the date of each advance of proceeds under the Loan, the date of any renewal, extension or modification of this Loan Agreement, and at all times until the Loan has been terminated and all amounts thereunder have been indefeasibly paid in full, that: (a) no Covered Entity (i) is a Sanctioned Person; (ii) has any of its assets in a Sanctioned Country or in the possession, custody or control of a Sanctioned Person; or (iii) does business in or with, or derives any of its operating income from investments in or transactions with, any Sanctioned Country or Sanctioned Person in violation of any law, regulation, order or directive enforced by any compliance authority; (b) the proceeds of the Loan will not be used to fund any operations in, finance any investments or activities in, or, make any payments to, a Sanctioned Country or Sanctioned Person in violation of any law, regulation, order or directive enforced by any Compliance Authority; (c) the funds used to repay the Loan are not derived from any unlawful activity; and (d) each Covered Entity is in compliance with, and no Covered Entity engages in any dealings or transactions prohibited by, any laws of the United States, including but not limited to any Anti-Terrorism Laws. You covenant and agree that you shall immediately notify us in writing upon the occurrence of a Reportable Compliance Event.

As used herein: "Anti-Terrorism Laws" means any laws relating to terrorism, trade sanctions programs and embargoes, import/export licensing, money laundering, or bribery, all as amended, supplemented or replaced from time to time; "Compliance Authority" means each and all of the (a) U.S. Treasury Department/Office of Foreign Assets Control, (b) U.S. Treasury Department/Financial Crimes Enforcement Network, (c) U.S. State Department/Directorate of Defense Trade Controls, (d) U.S. Commerce Department Bureau of Industry and Security, (e) U.S. Internal Revenue Service, (f) U.S. Justice Department, and (g) U.S. Securities and Exchange Commission; "Covered Entity" means you, your affiliates and subsidiaries, all guarantors, pledgors of collateral, all owners of the foregoing, and all of your brokers or other agents acting in any capacity in connection with this Loan; "Reportable Compliance Event" means that any Covered Entity becomes a Sanctioned Person, or is indicted, arraigned, investigated or custodially detained, or receives an inquiry from regulatory or law enforcement officials, in connection with any Anti-Terrorism Law or any predicate crime to any Anti-Terrorism Law, or self discovers facts or circumstances implicating any aspect of its operations with the actual or possible violation of any Anti-Terrorism Law; "Sanctioned Country" means a country subject to a sanctions program maintained by any Compliance Authority; and "Sanctioned Person" means any individual person, group, regime, entity or thing listed or otherwise recognized as a specially designated, prohibited, sanctioned or debarred person or entity, or

subject to any limitations or prohibitions (including but not limited to the blocking of property or rejection of transactions), under any order or directive of any Compliance Authority or otherwise subject to, or specially designated under, any sanctions program maintained by any Compliance Authority.

26. BENEFICIAL OWNERS. If applicable, you agree to deliver certification(s) of beneficial owners in the form requested by us (as executed and delivered to us on or prior to the date of this Loan Agreement and updated from time to time, the "Certification of Beneficial Owners"). You represent and warrant (which shall be continuing in nature and remain in full force and effect until all of the obligations are paid in full) that the information in the Certification of Beneficial Owners executed and delivered to us on or prior to the date of this Loan Agreement (if applicable), as updated from time to time in accordance with this Loan Agreement, is true, complete and correct as of the date hereof and as of the date any such update is delivered. You acknowledge and agree that the Certification of Beneficial Owners (if applicable) is a Loan document. You agree that from the date of execution of this Loan Agreement until all of the obligations have been paid in full and all of our commitments have been terminated, you will provide (i) confirmation of the accuracy of the information set forth in the most recent Certification of Beneficial Owners provided to us (if applicable), as and when requested by us, (ii) if applicable, a new Certification of Beneficial Owners in form and substance acceptable to us when the individual(s) identified as a controlling party and/or a direct or indirect individual owner on the most recent Certification of Beneficial Owners provided to us have changed, and (iii) such other information and documentation as may reasonably be requested by us from time to time for purposes of compliance by us with applicable laws (including without limitation the USA PATRIOT Act and other know your customer" and anti-money laundering rules and regulations), and any policy or procedure implemented by us to comply therewith.

Docusign Envelope ID: BBF9087C-631F-45BF-B4AC-03F012A3FC44

THIS IS A COPY
The Authoritative Copy of this record is held at NA4.docusign.net

SCHEDULE A
#■2906-R

EQUIPMENT DESCRIPTION:

| Quantity | Year, Manufacturer, Model and Description | Serial Number |
|---|---|---|
| 1 | 2020 Freightliner Cascadia SLEEPER TRACTOR | 3AKJHHDR6LSLR1515 |
| 1 | 2020 Freightliner Cascadia SLEEPER TRACTOR | 3AKJHHDR3LSLR1522 |
| 1 | 2020 Volvo 760 SLEEPER TRACTOR | 4V4NC9EH9LN202203 |
| 1 | 2019 Volvo 760 SLEEPER TRACTOR | 4V4NC9EH3KN202213 |
| 1 | 2019 Volvo 760 SLEEPER TRACTOR | 4V4NC9EHXKN202211 |
| 1 | 2019 Volvo 760 SLEEPER TRACTOR | 4V4NC9EH1KN202212 |
| 1 | 2019 Volvo 760 SLEEPER TRACTOR | 4V4NC9EH5KN202214 |
| 1 | 2019 Great Dane Reefer Trailer w/ ThermoKing | 1GRAA062XKB163665 |
| 1 | 2020 Freightliner Cascadia SLEEPER TRACTOR | 3AKJHHDR3LSLR1519 |
| 1 | 2020 Freightliner Cascadia SLEEPER TRACTOR | 3AKJHHDR8LSLR1516 |
| 1 | 2020 Volvo 760 SLEEPER TRACTOR | 4V4NC9EH5LN202201 |
| 1 | 2018 Freightliner Cascadia SLEEPER TRACTOR | 3AKJGLDR2JSHR1299 |
| 1 | 2020 Utility DRY VAN TRAILER | 1UYVS2537L7813010 |
| 1 | 2018 Wabash DRY VAN TRAILER | 1JJV532D2JL047207 |
| 1 | 2017 UTILITY DRY VAN TRAILER | 1UYVS2539HP841317 |
| 1 | 2017 UTILITY DRY VAN TRAILER | 1UYVS2534HG841113 |
| 1 | 2017 UTILITY DRY VAN TRAILER | 1UYVS2533HP883112 |
| 1 | 2022 UTILITY Reefer Trailer w/ ThermoKing C600 SN: 6001349974 | 3UTVS2530N8719106 |
| 1 | 2022 UTILITY Reefer Trailer w/ ThermoKing C600 SN: 6001355575 | 3UTVS2532N8719107 |
| 1 | 2022 UTILITY Reefer Trailer w/ ThermoKing C600 SN: 6001349977 | 3UTVS2534N8719108 |
| 1 | 2022 UTILITY Reefer Trailer w/ ThermoKing C600 SN: 6001355574 | 3UTVS2536N8719109 |
| 1 | 2020 Great Dane Dry Van TRAILER | 1GR1A0621LB169310 |
| 1 | 2020 Great Dane Dry Van TRAILER | 1GR1A062XLB169306 |
| 1 | 2020 Great Dane Dry Van TRAILER | 1GR1A0621LB169307 |
| 1 | 2020 Great Dane Dry Van TRAILER | 1GR1A0623LB169308 |
| 1 | 2019 HYUNDAI TRLRS DRY VAN TRAILER | 3H3V532C6KT097004 |
| 1 | 2018 WABASH 53' Air Ride DRY VAN TRAILER | 1JJV532D9JL048418 |
| 1 | 2017 WABASH 53' Air Ride DRY VAN TRAILER | 1JJV532D4HL962005 |
| 1 | 2019 Great Dane Reefer Trailer w/ ThermoKing | 1GRAA0628KB163664 |